**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**REGINALD HOLMES,**

      **Petitioner,**

**vs.**

                                    **CASE NO. 4:09cv240-SPM/WCS**

**KENNETH S. TUCKER, Secretary,
Florida Department of Corrections,[1]**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

      This is an amended petition for writ of habeas corpus filed by Reginald Holmes

pursuant to 28 U.S.C. § 2254.  Doc. 6.  Petitioner challenges his convictions for first

degree murder (three counts) and attempted first degree murder, case number 01-

0009-CFA,  in the Circuit Court of the Second Judicial Circuit, in and for Gadsden

County, Florida.  *Id.*

---

    [1] On August 24, 2011, Kenneth S. Tucker succeeded Edwin G. Buss as the
Secretary of the Florida Department of Corrections, and is automatically substituted as
Respondent.  Fed.R.Civ.P. 25(d).

Respondent filed an answer and the record in paper form. Doc. 12. References herein to exhibits are to the record in paper form. Petitioner did not file a traverse. Respondent concedes that the petition was timely filed. Doc. 12, p. 11. Respondent also concedes that state court remedies were exhausted as to all eleven claims, and has addressed the merits of each.

**Section 2254 Standard of Review**

The court may grant federal habeas corpus relief to "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A § 2254 petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." § 2254(b)(2).

For a claim which has been properly exhausted and adjudicated on the merits in state court, review is limited. The state court's determination of a factual issue is presumed correct, unless the petitioner can rebut the presumption by clear and convincing evidence. § 2254(e)(1). If the petitioner failed to develop the factual basis for a claim in state court, an evidentiary hearing in § 2254 proceedings is limited by § 2254(e)(2). *See also* Cullen v. Pinholster, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that review under § 2254(d)(1), discussed here ahead, "is limited to the record that was before the state court that adjudicated the claim on the merits," so the federal court may not rely on new evidence developed in the § 2254 proceedings).

Further, the petitioner must show that the state court's adjudication of the claim:

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

  (2) resulted in a decision that was based on an unreasonable
  determination of the facts in light of the evidence presented in the State
  court proceeding.

§ 2254(d).[2]

  Section 2254(d) is part of the basic structure of federal habeas jurisdiction,
  designed to confirm that state courts are the principal forum for asserting
  constitutional challenges to state convictions.  Under the exhaustion
  requirement, a habeas petitioner challenging a state conviction must first
  attempt to present his claim in state court.  28 U.S.C. § 2254(b). If the
  state court rejects the claim on procedural grounds, the claim is barred in
  federal court unless one of the exceptions to the doctrine of *Wainwright v.
  Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977),
  applies.[3]  And if the state court denies the claim on the merits, the claim
  is barred in federal court unless one of the exceptions to § 2254(d) set out
  in § § 2254(d)(1) and (2) applies.  Section 2254(d) thus complements the
  exhaustion requirement and the doctrine of procedural bar to ensure that
  state proceedings are the central process, not just a preliminary step for a
  later federal habeas proceeding, *see id.*, at 90, 97 S.Ct. 2497.

Harrington v. Richter, 562 U.S. __, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011).  If the

state court issues an opinion, it need not cite or even be aware of controlling Supreme

Court cases under § 2254(d).  *Id.*, 131 S.Ct. at 784 (citation omitted).  Further,

  [w]here a state court's decision is unaccompanied by an explanation, the
  habeas petitioner's burden still must be met by showing there was no
  reasonable basis for the state court to deny relief.  This is so whether or
  not the state court reveals which of the elements in a multipart claim it
  found insufficient, for § 2254(d) applies when a "claim" not a component of
  one, has been adjudicated.

*Id.*

---

  [2] In Cullen, the Court did not address whether a district court could choose to
hold a hearing under § 2254(e)(2) to determine whether § 2254(d)(2) was satisfied.  131
S.Ct. at 1401, n. 8 and 1411, n. 20.

  [3] To excuse a procedural default, as noted in Wainwright and the cases cited
*supra*, a petitioner must demonstrate either cause and prejudice or actual, factual
innocence.

For an ineffectiveness of counsel claim, the "clearly established" standard is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner has a heavy burden, as he must show that "no competent counsel would have taken the action that his counsel did take."  Fugate, 261 F.3d at 1217 (citation omitted).  There are no rigid requirements or absolute duty to investigate a particular line of defense, and "more is not always better."  Id. (citations omitted).

Even if deficient performance is demonstrated, a petitioner must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068. It must be "reasonably likely" the result would have been different; "[t]he likelihood of a different result must be substantial, not just conceivable."  Harrington, 131 S.Ct. at 793 (citations omitted).

The Strickland standard itself is hard to satisfy, but:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is

substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  *The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Harrington, 131 S.Ct. at 788 (citations omitted, emphasis added).

**Trial evidence**

Alan Richardson lived in his family home in Havana, Florida, in Gadsden County, from 1999 to the beginning of 2001, and the home was known as a place where people could buy, sell, and use illegal drugs.  Ex. F (initial brief on appeal), p. 5.  Brenda Gibson, Stacey Dutton, and Terri Hall regularly used drugs in that home, and so did Gregory Williams.  *Id.*  Defendant sold drugs, but did not use them.  *Id.*

Shortly before noon on January 4, 2002, Petitioner was driven to Richardson's home.  *Id.*, pp. 5-6.  Petitioner told everyone there it was his birthday and wanted to celebrate.  *Id.*, p. 6.  Petitioner gathered Williams, Richardson, Gibson, Dutton, and Hall in the living room, talked about his mother and father, pulled out a pistol, ordered the five people to get on the ground, shot Richardson in the head, and then shot the three women in the head.  *Id.*, pp. 6-7.  Richardson survived and witnessed the shooting.  *Id.*, pp. 6-10.  The three women died.  Petitioner then walked outside with Williams and in the presence of Williams, walked into woods and threw the gun away.  *Id.*, p. 7.  The handgun that fired the bullets into the heads of the victims was found in the woods.  *Id.*, p. 12.  A spot of blood from a male was found on Petitioner's sock.  *Id.*  Gunshot residue was found on Petitioner's hands.  *Id.*, p. 13.  Petitioner denied that he committed the murders.  *Id.*, p. 11.

The state sought the death penalty.  Doc. 12, pp. 2-3.  The jury recommended life in prison without parole, and life was imposed by the trial court.  *Id.*

**Ground one**

Petitioner contends that his trial attorney was ineffective for failing to present a coherent defense at trial.  Doc. 6, p. 4.  "In particular, [Petitioner] alleges that counsel failed to retain particular witnesses, adequately pursue an alibi defense and impeach state witnesses."  *Id.*  He alleges that due to "counsel's errors," he was "deprived of the right to present relevant, admissible evidence indicating that another person committed the crimes."  *Id.*, p. 4(a).

The allegations of ground one fail to state a federal claim, and there is no need to review the state court ruling.[4]  Petitioner does not describe the allegedly "coherent" defense he means, and he has not described the names of the witnesses or what they might have said.  "A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).  A defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel.  *See* Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir.1985), *cert. denied*, 479 U.S. 918 (1986); Bolder v. Armontrout, 921 F.2d 1359, 1363-1364 (8th Cir.1990), *cert. denied*, 502 U.S. 850 (1991); United States v.

---

[4] Some of the individual allegations appear again in other grounds, and the merits of those grounds are before the court.

Vargas, 920 F.2d 167, 169-170 (2d Cir.1990), *cert. denied*, 502 U.S. 826 (1991).

Ground one is without merit on its face.  § 2254(b)(2).

**Ground two**

Petitioner contends that his trial attorney was ineffective for failing to impeach Gregory Williams.  Doc. 6, p. 4.  Williams testified at trial that he saw Petitioner shooting the victims and then throw the handgun away, but Petitioner alleges that in the police report and in his deposition, Williams said that Petitioner was not at the residence.  *Id.*, pp. 4-4(a).

Petitioner has presented no evidence to this court that Williams testified in his deposition that Petitioner was not at the residence at the relevant time, when the victims were shot.  In his Rule 3.850 motion, Petitioner simply alleged that Williams testified in his deposition:

> After everyone came back, he [Williams] left Allan's house [Richardson] with Brenda Gibson and when he returned, the Defendant was now not at the residence.  *He assumed that the Defendant showed up at Allan's residence while he was in the back room.*  (Gregory Williams deposition pg. 98-99).

Ex. I, R. 20 (emphasis added)  The timing of this description of events is not specified, and it seems implicit that Williams did not deny that Defendant "showed up" at the Richardson residence later, before the murders were committed.

The trial court denied this claim, finding that the trial record, pages 300-320, showed that Petitioner's attorney "raised multiple inconsistencies between the witness'[s] pretrial deposition and recollection on the stand."  Ex. J, R. 90-91.  The court noted that Petitioner's attorney used Williams's deposition to refresh Williams's recollection, but "the witness often could not recall."  *Id.*, R. 91.

On cross examination at trial, Petitioner's attorney established that Petitioner did not rob the victims after he shot them.  Ex. C, p. 302.  He established that Williams and Petitioner walked down the road after the shooting, met a Deputy Sheriff who was "going down there, quick," but Williams did not wave the Deputy down or report the shootings.  *Id.*, pp. 310-311.  He established that Williams did not run back and check on his friends after Petitioner had left him.  *Id.*, p. 311.  He got Williams to admit that instead, he just walked down the road and "made a dope deal."  *Id.*  Counsel then impeached Williams, who at trial said he could not remember the names of the buyers, but had named them in his deposition.  *Id.*, p. 312.  He established that Williams testified that he returned to the scene of the crime in a vehicle with a person named Joy, yet in his deposition he said he walked back to the house.  *Id.*, p. 315.  He established that before Williams returned to the scene of the murders, he made no attempt to get help.  *Id.*, p. 316.  He established that when Williams returned to the house, Williams did not volunteer any information to law enforcement officers.  *Id.*  He asked whether Williams went back to get his beer (that had been left in the house), and when he said no, impeached him with contrary testimony in his deposition.  *Id.*, p. 317.  He established that Deputy Smith had asked him at the scene about what happened, and Williams did not identify Petitioner by name as the one who murdered the women.  *Id.* He established that Williams always knew Petitioner as Reggie, but in his deposition, he said he knew him as "Braid," but admitted under cross examination that he did not tell the police that.  *Id.*, p. 318.  He then established that in his deposition, Williams said he told the police that the person was named "Braid."  *Id.*  He then established that Williams never did know Petitioner as "Braid."  *Id.*, p. 319.  He established that when he

gave his statement to the police, Williams only knew Petitioner as Reggie.  *Id.*  He established that Williams first claimed that he never had had a gun before, then backtracked and said that "probably" he had had a gun, and then that conceded that he used to have a small handgun.  *Id.*, pp. 319-320.

Petitioner has not shown that his attorney could have asked Williams any other question that might have changed the outcome.   As a consequence, Petitioner has not shown that the Rule 3.850 court's determination of this claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or has "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(1) and (2).  Thus, ground two affords no relief.

**Ground three**

Petitioner contends that his attorney was ineffective for failing to impeach Richardson's trial testimony with his prior statements that after he was shot, he did not see or hear anything.  Doc. 6, p. 5.  He also faults counsel for failing to confront Richardson with his deposition testimony that after escaping from the house, he ran to a neighbor's house but did not tell that neighbor (Ellison) who had shot him.  *Id.*, p. 5(a).

The state court denied this claim, reading it as a claim of failure to investigate. The state court cited the deposition of Alan Richardson as evidence that Petitioner's attorney did properly investigate Richardson's pretrial statements.  Ex. J, p. 91.

The claim in the Rule 3.850 motion began a "failure to investigate" pretrial statements of Richardson, but was then explained as a claim of a failure to *use* those

pretrial statements to impeach Richardson at trial.  Ex. I, R. 24-27.  Petitioner

specifically mentioned the deposition of Richardson in his Rule 3.850 motion, so the

claim was not a failure to depose Richardson.  *Id.*, R. 25.  Since the state court

misunderstood the claim, it did not rule on the claim presented and there is no state

decision as to which this court must afford deference.

At trial, Richardson said that Petitioner had started coming over to his house.  Ex.

C, p. 220.  He said that Petitioner sold cocaine.  *Id.*  He said that on the day of the

murders, Petitioner said it was his birthday and Richardson thought they needed to get

"something to drink," some alcohol.  *Id.*, pp. 224-225.  A bit later, Petitioner said he

wanted to talk with everyone in the living room.  *Id.*, pp. 226-227.  Petitioner said it was

his birthday and that his father had died ten years ago on that day, and he pulled a

pistol and ordered everyone to lie down.  *Id.*, p. 228.  Richardson got to his knees.  *Id.*,

p.229.  Richardson said he told Petitioner not to hurt anyone, and Petitioner shot

Richardson in the head.  *Id.*, p. 231.  Richardson testified that he was shot up by his

temple.  *Id.*, p. 206.  His jaw was broken in three places.  *Id.*  Richardson said he

became unconscious, then opened his eyes, and his mouth was filled with blood.  *Id.*, p.

232.  When he finally rose, Richardson said that he saw the bodies of the three women,

and Petitioner and Williams were gone.  *Id.*, R. 233.  Richardson hid in another room

and eventually went out the window and made it to a neighbor's home.  *Id.*, p. 237.  At

the hospital, during an interview with a law enforcement officer, Richardson wrote

"Reginald" on a paper as the person who shot him.  *Id.*, p. 239.

On cross examination, Petitioner's attorney established that Richardson now has

problems remembering names and numbers.  *Id.*, p. 242.  He said that he first identified

"Reggie" as the shooter at the hospital.  *Id.*, p. 243.  Counsel then impeached

Richardson's testimony, that he had known Petitioner one year, with deposition

testimony that he had known him two years.  *Id.*  Counsel impeached Richardson by

showing that had used drugs for 17 years and had five felony convictions.  *Id.*, p. 246.

Consequently, the first part of the claim is without merit.  Richardson's prior

statements have not been further described by Petitioner, but whatever they were,[5]

Richardson obviously saw and heard things at some point because he recovered

enough to run into a back room.  He had to have seen the three women lying on the

floor as he left that room.  Moreover, it was advantageous for Petitioner's counsel to

leave Richardson's testimony as presented, with no potential testimony that Richardson

actually saw Petitioner shoot any of the women.

The second part of this claim is also without merit.  It is true that Ellison testified

that Richardson came to his house bleeding heavily from his face and told Ellison that

"Reggie" shot me.  Ex. B, p. 58.  But Richardson did not testify at trial that he told

Ellison who had shot him.  Instead, he said that the first time he identified the assailant

was in the hospital, in response to questioning by a law enforcement officer.  Had

Petitioner's counsel pressed Richardson on this point, Richardson might recalled that he

also told Ellison that "Reggie" shot me.  Indeed, he might have remembered, as set

forth the narrative prepared by Sergeant Steve Coyne, that when Deputy Faison arrived

on the scene, Richardson told her that "Reggie" had shot him.  Ex. J, R. 70.  Uncovering

---

[5] The record contains the deposition of Richardson but because of a copying mistake, half the pages are missing.  Ex. J, R. 77-88.  There is no need to supplement this record.  Richardson obviously saw himself being shot, and he obviously saw bodies of the three women, and that is all that he said at trial.

these earlier accusations would have not helped Petitioner at all.  That Richardson forgot them would not have impeached his credibility.  After all, Richardson had just been shot when he ran to Ellison's home, had been unconscious, was weak from loss of blood, and it would have been reasonably believable by the jury that Richardson had forgotten that earlier he had told Ellison and Deputy Faison that "Reggie" shot him.  Ground three is without merit.

**Ground four**

Petitioner faults his attorney for not calling an expert to "refute" the state's expert as to the gunshot residue.  Doc. 6, p. 5.  He argues that his own expert could have explained to the jury that the gunshot residue found on Petitioner's hands was "a result of the casings Petitioner found at the residence and not from any shooting."  *Id.*, p. 5(a).

The trial court denied this because Petitioner had failed to establish that such an expert would have been available.  Ex. J, R. 91.  This is not an unreasonable application of Strickland.  As explained earlier, Petitioner cannot just speculate that there was a witness that might have testified in a certain way.  Petitioner must credibly allege it.

Further, counsel elicited exactly the evidence that another expert would have provided.  He established with the State's expert that gunshot residue could have been picked up from touching a spent cartridge or from touching the weapon.  Ex. D, p. 462.  Further, as will be discussed ahead, it was Petitioner's strategy to suggest that he got gunshot residue on his hands from shooting squirrels with another firearm.

But the claim fails for a much more fundamental reason.  Greg Williams did not testify that Petitioner picked up shell casings after the shooting, but he did testify that Petitioner did the shooting, threw the gun away into the woods, and then asked Williams

to go into the house to see if anybody was alive.  Ex. B, pp. 271-280.  Williams said on

cross examination that the only thing he knew that Petitioner had in his hand when

Williams left was Richardson's cellphone.  *Id.*, p. 308.  The only other person who could

have testified that Petitioner picked up shell casings at the scene was Petitioner himself,

and Petitioner did not testify.  Ex. C, p. 465.  Thus, a predicate for this speculative

expert testimony did not exist.  Ground four is without merit.

**Ground five**

Petitioner asserts that his attorney was ineffective for failing to show that

Investigator Smith had a friendship with Gregory Williams.  Doc. 6, p. 6.  He argues that

Smith was trying to help Williams escape prosecution for the murders.  *Id.*, p. 6(a).

This claim is facially insufficient.  Petitioner makes the conclusory allegation that

Smith tried to assist Gregory Williams to escape prosecution due to friendship, but

Petitioner does not describe any evidence that was available to establish that friendship

or the nature of the friendship.  The ground is without merit on its face, without

reference to the state court's decision.

Alternatively, the state court's decision is not unreasonable.  The trial court

rejected this claim, first noting that Petitioner's attorney deposed Smith, and Smith

testified in the deposition that he did not know Williams "that well," and said that while

he was present when Williams was interviewed, another investigator took Williams's

statement.  Ex. J, R. 91.  Pages 27-28 of the deposition were referenced, but those

pages do not appear to be in this record.  *Id.*  It must be assumed, however, that Smith

so testified in his deposition.  As noted above, Petitioner has presented no evidence of

a friendship.

The court also noted that the deposition and pages 189-190 of the trial transcript revealed an adequate investigation by counsel. *Id.*, R. 91-92. Investigator Smith had testified that he knew the victims well enough to identify them, and he knew that the Richardson residence was a drug house. Ex. B, pp. 168-171. Smith also testified that he knew Alan Richardson and Gregory Williams, knew they were involved with drugs as users, and knew that Gregory Williams sometimes stayed at the Richardson house. *Id.*, pp. 177-179. On cross examination, counsel established that Gregory Williams did not appear again at the scene of the murders for one hour 45 minutes and, even then, did not come to Investigator Smith; Smith had to go to him. *Id.*, p. 189. Counsel also established that Smith could not identify Petitioner until he obtained the statement from Gregory Williams. *Id.*, p. 191. Thus, this cross examination appears to have been based upon adequate investigation and knowledge of the basic facts, and there is no credible evidence that Investigator Smith was a friend of Williams. For these reasons, ground five is without merit.

**Ground six**

Petitioner faults his attorney for not calling Investigator Steve Coyne as a witness at trial. Doc. 6, p. 6. He alleges that Coyne prepared a police report in which trial witnesses made statements that were inconsistent with statements that those witnesses later made in depositions and at trial. *Id.*, p. 6(a).

The trial court held that these allegations were "unsubstantiated and cannot sustain a claim of" ineffective assistance of counsel. Ex. J, R. 92. This was not an unreasonable application of Strickland because this does not allege a Sixth Amendment violation. Like ground one, Petitioner has not alleged who the trial witnesses were or

what statements they made to Coyne that were inconsistent with later testimony.  It is

impossible to determine whether counsel erred, or whether prejudice was caused to the

outcome, without such allegations.  Further, as pointed out by the trial court, *id.*,

Petitioner has not persuasively argued how Coyne would have been allowed to testify

as to what other witnesses told him during the investigation.  Ground six, therefore,

affords no relief.

**Ground seven**

Petitioner contends his attorney was ineffective for failing to call Darryl Smith

[elsewhere in the record, Smart] and Randy Jenkins as alibi witnesses.  Doc. 6, p. 7.  In

further describing the claim, Petitioner states that "Smith" and Jenkins would have

testified that they saw Gregory Williams acting strange on the day of the offense, with

blood on his shoes and pants.  *Id.*  In other words, these were not alibi witnesses (who

might have said that Petitioner was not present at the scene of the crime), but would

have cast suspicion upon Williams.

The trial court rejected this claim, noting that Petitioner had failed to allege that

Smart was available to testify at trial.  Ex. J, p. 92.  Further, as pointed out by

Respondent, Williams himself testified that he was present when the four people were

shot, so, even though Williams denied having blood on his clothing, Ex. C, p. 321, it

would not be surprising if Williams had had blood on his shoes and pants.  Petitioner

has not shown that the trial court's ruling was an unreasonable application of Strickland.

**Ground eight**

Petitioner contends that his attorney told him that if he testified, the State could

inquire as to the specific nature of his prior convictions.  Doc. 6, p. 7.  He asserts that

this was legally incorrect, but it convinced him not to testify.  He asserts that had he

testified, he would have testified that Gregory Williams committed the offenses.  *Id.*, p.

7(a).

In rejecting this claim (raised as ground nine in the Rule 3.850 motion), the trial

court determined that FLA. STAT. § 90.610 allows the introduction of certain crimes to

impeach.  Ex. J, p. 92.  The court also pointed out that Petitioner knowingly waived his

right to testify at trial.  *Id.*, R. 93, citing Ex. D, p. 476.

The trial court seems to have misunderstood this claim in part.  Petitioner

contends that he was told that had he testified, the *nature* of his prior crimes would have

been revealed to the jury.  Assuming this is true, this would have been incorrect advice.

FLA. STAT. § 90.610(1) provides:

> A party may attack the credibility of any witness, including an accused, *by
> evidence that the witness has been convicted of a crime if the crime was
> punishable by death or imprisonment in excess of 1 year* under the law
> under which the witness was convicted, or if the crime involved dishonesty
> or a false statement regardless of the punishment, with the following
> exceptions [not applicable here].

FLA. STAT. § 90.610(1).  "This inquiry is generally restricted to the existence of prior

convictions and the number of convictions, unless the witness answers untruthfully."

Jackson v. State, 25 So. 3d 518, 526 (Fla. 2009), *cert. denied*, 130 S.Ct. 3420 (2010)

(citing Fotopoulos v. State, 608 So. 2d 784, 791 (Fla. 1992)).  Thus, the nature of the

prior conviction is inadmissible unless the witness answers untruthfully, or "attempts to

mislead or delude the jury about his prior convictions."  Fotopoulos v. State, 608 So. 2d

at 791.

The second portion of this ruling is supported by the record.  The trial court advised Petitioner that he had a right to testify, and that it ultimately was his decision. Ex. D, p. 476.  Petitioner told the court he had no questions, that he had reflected upon it, and he had decided not to testify.  *Id.*

Petitioner fails to set forth the nature of his prior convictions.  Thus, the claim is insufficient on its face.  It is impossible to determine whether the underlying facts of those convictions were such that a reasonable person, under the circumstances facing Petitioner, would have been deterred from testifying while such a person would have testified if only the fact of the convictions had been placed in evidence.

Further, Petitioner fails to inform this court as to how he might have testified that Williams committed the murders.  It must be assumed that he would have so testified as an eye witness.  But it was Petitioner's strategy to argue that he was not at the scene of the crime.  In statements to law enforcement agents prior to trial, Petitioner denied knowing anything about the murders.  Ex. C, pp. 367, 369, 388.  He only admitted that he had been at that house earlier in the day.  *Id.*, p. 368.  In closing, Petitioner's attorney argued that there was no forensic evidence on Petitioner's clothing or the cellphone at the scene tying him to the murders.  Ex. D, pp. 484-485.  He pointed out that the gunshot residue on Petitioner's hands could have come from shooting squirrels with another firearm since the test does not identify the weapon that produced the residue.  *Id.*, pp. 486-487.  He argued that Gregory Williams did not behave as a person who had just seen his friends murdered by Petitioner.  *Id.*, pp. 487-492.  He argued that Williams left Richardson with a gunshot wound to the head, expecting Richardson to die, which would have eliminated the last witness, assuming that Williams had been the

killer.  *Id.*, p. 532.  Finally, Petitioner's attorney argued that the jury had to decide whether Petitioner was at the scene of the crime.  *Id.*

Consequently, Petitioner was not deterred from testifying by erroneous advice about whether the nature of his prior felonies would be revealed to the jury.  He was deterred because his testimony would have  destroyed his defensive strategy, that he was not there when Williams murdered the three women.  Thus, Petitioner has not shown that the trial court's adjudication of this claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that it has "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(1) and (2).

**Ground nine**

Petitioner argues that his attorney was ineffective for objecting to admission of pre-death photographs of the three victims.  Doc. 6, p. 8.  He argues that this objection caused the prosecutor to rely instead upon autopsy photographs to identify the victims, which "inflamed the passion of the jury."  *Id.*

The trial court denied this claim (as ground ten in the Rule 3.850 motion), first ruling that the autopsy photographs were properly admitted into evidence to show the location of the victims' wounds and to help the medical examiner explain his findings.  Ex. J, R. 93.  Further, the court found that Petitioner's counsel did object to use of the autopsy photographs.  *Id.*, citing pages 135-138 of the transcript.

Petitioner's attorney made a "403 objection"[6] to the admission of the autopsy photographs.  Ex. B, p. 136.  He argued that the identity of the victims was not in dispute, and therefore the probative value (to identify the victims) was outweighed by the prejudicial effect.  *Id.*, p. 137.  The court determined that the photographs were not "too gory" or inflammatory, and overruled the objection.  *Id.*, p. 138.

Petitioner has not shown anything else that his attorney might have done to keep the autopsy photographs out of evidence.  Such evidence is routinely permitted in Florida:

> This Court has upheld the admission of photographs when they are offered to explain a medical examiner's testimony, the manner of death, the location of the wounds, or to demonstrate the heinous, atrocious, or cruel (HAC) factor.  In *England v. State*, 940 So. 2d 389, 399 (Fla. 2006), this Court held that the trial court did not abuse its discretion in permitting a medical examiner to testify using autopsy photographs depicting "the victim's head, torso, and hands in a moderately decomposed state with extensive discoloration, skin sloughing off, and insect larvae on the wounds."  This Court held that the photographs were relevant to establish the manner and cause of death and the HAC aggravator.  *Id.*

McWatters v. State, 36 So. 3d 613, 637 (Fla.), *cert. denied*,131 S.Ct. 510 (2010).  Consequently, Petitioner has not shown that the trial court's adjudication of this claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that it has "resulted in a decision that was based on an unreasonable

---

[6] FLA. STAT. § 90.403 provides: "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. This section shall not be construed to mean that evidence of the existence of available third-party benefits is inadmissible."

determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1) and (2).

**Ground ten**

When the State rested, the jury asked the trial court whether there would be a witness to explain the possible or likely behavior of someone who has consumed alcohol and powder cocaine 15 to 30 minutes after use.  Petitioner contends that his attorney was ineffective for failing to present an expert witness that would have answered that question.  Doc. 6, pp. 8-8(a).  He contends that this evidence would have shown that the testimony of Gregory Williams was unreliable.  *Id.*, p. 8(a).  The trial court found that the claim (as ground eleven in the Rule 3.850 motion) was insufficient on its face because Petitioner failed to allege that such a witness existed or was available to testify.  Ex. J, R. 93.

The question was presented to the court just after a lunch break.  Ex. D, p. 465. Just after the question was revealed to the parties, the State rested.  *Id.*  Petitioner's attorney then rested.  *Id.*

There was evidence that just before the murders, Williams had ingested $20 worth of powder cocaine and was drinking a beer.  Ex. C, pp. 264, 267.  It is common knowledge that alcohol and cocaine have effects upon a person's mental state, and an expert was not needed for the jury to draw that conclusion.  Further, Petitioner has not identified an expert who would have testified that the testimony of Gregory Williams was unreliable due to ingestion of a beer and a small quantity of cocaine.

Finally, counsel cannot be expected to anticipate questions from the jury that do not become known until the end of the State's case.  Indeed, it undoubtedly happens

routinely that, during its deliberations, a jury has questions about the evidence that might not have been completely answered by the evidence.  Thus, the trial court's ruling was not an unreasonable application of <u>Strickland</u>.

**Ground eleven**

Petitioner contends that the Rule 3.850 court erred by failing to grant Petitioner's motion for leave to amend insufficient Rule 3.850 claims.  Doc. 6, p. 9.

This fails to state a federal claim.  A claim that the post-conviction proceedings were unfair or marred by procedural error does not state a federal claim.  <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir.1987) (state court's failure to hold a hearing on a Rule 3.850 motion and failure to attach relevant portions of the record to its order were unrelated to the cause of detention, and did not state a basis for § 2254 relief); *see also* <u>Trevino v. Johnson</u>, 168 F.3d 173, 180 (5th Cir. 1999) ("habeas corpus relief is not available to correct alleged errors in state habeas proceedings," citing <u>Spradley</u>, and cases from the Fourth, Fifth, Sixth, Eighth and Ninth Circuits).  Ground eleven, therefore, is without merit.

**Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Reginald Holmes pursuant to 28 U.S.C. § 2254, challenging his convictions for first degree murder (three counts) and attempted first degree murder, case number 01-0009-CFA, in the Circuit Court of the Second Judicial Circuit, in and for Gadsden County, Florida, be **DENIED WITH PREJUDICE** and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on November 18, 2011.

> **s/    William C. Sherrill, Jr.**
> **WILLIAM C. SHERRILL, JR.**
> **UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**